IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) |
| | ) CRIMINAL NOS. 2:15-146 |
| MONROE BLANKS III, | )                     2:15-263 |
| Defendant. | ) |

AMBROSE, United States Senior District Judge

## MEMORANDUM ORDER OF COURT

**I. Introduction**

Defendant has filed a *pro se* Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act of 2018. [Crim. No. 15-146, ECF No. 62; Crim. No. 15-263, ECF No. 30]. He seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). He states that he fears that his medical conditions (asthma and hypertension) render him particularly susceptible to complications from the COVID-19 virus if he were to contract it in prison (FCI Gilmer). Id. The Government has filed a Response in Opposition [Crim No. 15-146, ECF No. 67; Crim. No. 15-263, ECF No. 35]. After careful consideration of the submissions, and for the reasons set forth below, Defendant's Motion is denied.

**II. Background**

On July 8, 2015, Defendant was indicted and charged with: one count of possession of a firearm and/or ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). [Crim No. 15-146, ECF No. 4]. On December 12, 2015, an Information was filed at criminal case number 15-263, charging Defendant with one count of conspiracy to tamper with a witness in violation of 18 U.S.C. § 1512(k). [Crim No. 15-263, ECF No. 1]. On December 17, 2015,

Defendant pled guilty to both of these counts. [Crim No. 15-146, ECF No. 31; Crim No. 15-263, ECF No. 8]. On April 5, 2016, pursuant to an 11(c)(1)(C) plea agreement, the Court sentenced Defendant, an armed career criminal, to an agreed upon sentence of 188 months at case number 15-146, to be served concurrently with 188 months at case number 15-263, and concurrently with a sentence then-yet to be imposed by the Allegheny Court of Common Pleas for Defendant's possession of a weapon by a convicted felon. The Defendant was further sentenced to supervised release for a term of 5 years at case number 15-146, and 3 years at case number 15-263, to run concurrently. [Case No. 15-146, ECF No. 53; Case No. 15-263, ECF No. 28]. Defendant is incarcerated at FCI Gilmer with a projected release date of July 7, 2028. He is 35 years old.

### III. Analysis

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could seek a reduction of sentence. United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019). Section 603(b) of the First Step Act, entitled "Increasing the Use and Transparency of Compassionate Release," permitted prisoners the right to file compassionate release motions with the court "so long as they first ask the BOP to file a motion on their behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first." United States v. Somerville, 12cr225, 2020 WL 2781585, at * 2 (W.D. Pa. May 29, 2020) (citing 18 U.S.C. § 3582(c)(1)); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The First Step Act thus empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). The statute provides that:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
>   (1) in any case—
>
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

>  imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>  (i)  extraordinary and compelling reasons warrant such a reduction….
>
>  And that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has exhausted his administrative remedies.[1] Consequently, I turn to a consideration of whether the Defendant has established "extraordinary and compelling reasons" in support of compassionate release."

The Sentencing Commission issued a policy statement related to § 3582(c)(1)(A). It provides, in part, that: "the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13. The policy statement then identifies four categories of "extraordinary and compelling reasons." They consist of: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13 Cmt., App. Note 1(A)-(D). The Defendant bears the burden of proving that extraordinary and compelling reasons exist. See United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

The Application Notes to the policy statement recognize that "extraordinary and compelling reasons" may exist based on the defendant's medical condition. That is, extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition, which substantially diminishes his ability to provide self-care within the correctional

---

[1] The Government notes that BOP records show that Defendant submitted a request to the Bureau of Prisons ("BOP") on June 7, 2020, and that the Warden denied that request on June 18, 2020. [Crim No. 15-146, ECF No. 67-1; Crim. No. 15-263, ECF No. 35-1]. Because, as the Government acknowledges, more than 30 days have lapsed since the date of receipt of the request by the warden, the Motion is ripe.

3

facility and from which he is not expected to recover. U.S.S.G. 1B1.13, Cmt., App. Note 1(A)(ii). If Defendant's condition does not meet this standard, I also may assess whether extraordinary and compelling reasons for compassionate release exist other than, or in combination with, this defined ground. U.S.S.G. 1B1.13, Cmt., App. Note 1(D). Smith, 2020 WL 4047485, at **2-3.[2]

Here, Defendant contends that his pre-existing hypertension and asthma, coupled with the ongoing Covid-19 pandemic, constitute extraordinary and compelling circumstances in this case. [Crim. No. 15-146, ECF No. 62; Crim. No. 15-263, ECF No. 30]. In the body of his motion, he states that his asthma was very bad growing up, and that he was very sick with pneumonia and the flu in January 2015, prior to his incarceration. See id. Defendant did not supply any medical records with his motion; however, the Government filed a copy of Defendant's BOP medical records under seal. [Crim No. 15-146, ECF No. 68; Crim. No. 15-263, ECF No. 36]. The Government concedes that these records reflect a history of asthma and hypertension. [Crim No. 15-146, ECF No. 67, at 7; Crim. No. 15-263, ECF No. 35, at 7].

The Government notes that the CDC lists both hypertension and moderate-to-severe asthma as conditions that "might" place sufferers at an increased risk for severe illness from Covid-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 4, 2021). Neither condition is currently on the CDC's list of conditions that do place sufferers at an increased risk. Although I certainly am sympathetic to Defendant's hypertension and asthma diagnoses, and do not dismiss the CDC's findings that those conditions are potential risk factors, I find that the record fails to demonstrate that Defendant's condition is serious enough in nature in and of itself to warrant release. The BOP

---

[2] As set forth above, the Application Notes to § 1B1.13 of the Guidelines also state that "other reasons" might warrant compassionate release. U.S.S.G. § 1B1.13, cmt. note 1(D). Because this Guideline provision has not been updated since the enactment of the First Step Act, there is a dispute as to whether a court may define what fits into the "other reasons" category, or if such determination is left to the BOP. See United States v. Hammond, Criminal No. 18-184, 2020 WL 2126783, at *4 n.5 (W.D. Pa. May 5, 2020). Consistent with the majority of courts that have considered this issue, I have found that the "catch-all" provision under (D) permits courts to independently assess whether "extraordinary and compelling reasons" exist, and I have conducted such an assessment in this case. See Smith, 2020 WL 4047485, at *3.

medical records the Government has provided indicate that Defendant's asthma only flares up with exercise, does not require daily medication, and is well-controlled by an albuterol inhaler as needed. See, e.g., Ex. A, at 10 (September 26, 2018 visit, where he states that he has asthma symptoms during exercise); 115-121 (December 8, 2020 visit, where he states he does not need to use inhaled corticosteroids previously prescribed and only uses the Short-Acting Beta Agonist (SABA), Albuterol, when exercising). With respect to hypertension, the medical records reflect that, although Defendant has had slightly elevated blood pressure readings in the past, he does not need to take medication for his hypertension and the condition seems mild. Id. at pp. 64, 75, 132. The records likewise do not document any hypertension-specific incidents requiring medical care during his incarceration. In addition, Defendant is only 35 years old, otherwise appears to be in good health, and recently reported to his medical provider that he regularly engages in physical exercise. Id. at 115. Defendant does not contend he is currently suffering from Covid-19 symptoms or experiencing serious symptoms related to his hypertension or asthma, and there is no indication that he currently lacks access to medication or to appropriate care for his conditions in prison. The mere chance that Defendant may contract the virus and be more susceptible to complications if he does so is not enough on its own to demonstrate extraordinary and compelling circumstances supporting release in this case. See, e.g., United States v. Fry, 2020 WL 1923218 (D. Minn. Apr. 21, 2020) (stating that, to merit compassionate release, Defendant must show more than mere fear or speculation concerning the possibility of contracting the virus); United States v. MacKenzie, 458 F. Supp. 3d 53, 55 (D. Mass. May 1, 2020) (same); see also United States v. Davis, Crim. No. 17-82, 2020 WL 7230209, at *2 (W.D. Pa. Dec. 8, 2020) (defendant with similar medical history did not demonstrate extraordinary and compelling circumstances).

In evaluating Defendant's medical conditions, I also have considered the impact of the Covid-19 pandemic at FCI-Gilmer. Overall, the BOP has a detailed plan implementing modified operations across its facilities in order to mitigate the spread of COVID-19, limiting inmate movement, screening staff and inmates, and modifying operations to maximize social distancing.

See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited January 4, 2021). Although some federal prisons have nevertheless seen significant cases of COVID-19 within their facilities, as of January 4, 2021, FCI-Gilmer currently has 70 reported cases among 1,472 total inmates and 5 cases involving staff members. The facility has zero inmate or staff deaths attributed to COVID-19. See https://www.bop.gov/coronavirus/ (last visited January 4, 2021). Cf. United States v. Lytle, 3:17-CR-50020-RAL, 2020 WL 7706989, at *1-*2 (D.S.D. Dec. 29, 2020) ("While it is true that the number of active cases and the number of those that have recovered from the illness [at FCI Gilmer] have increased since August, the fact remains that the facility has reported no inmate or staff deaths. The BOP has taken precautions to protect [Defendant] and his fellow inmates.").

For all of the above reasons, although I recognize the gravity of the Covid-19 pandemic and am sympathetic to Defendant's concerns for his health and safety, I find that these concerns at this moment in time are too generalized to be considered "extraordinary and compelling" for purposes of compassionate release.

Even if "extraordinary and compelling" reasons did exist, release of Defendant at this time is inappropriate in light of the factors set forth in § 3553(a). Generally, once a court finds that an "extraordinary and compelling" reason may warrant release, it also must consider whether release is appropriate in light of the factors set forth under § 3553(a). Specifically, in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." United States v. Bess, 455 F. Supp. 3d 53, 66 (W.D.N.Y. 2020). As the Court of Appeals for the Third Circuit recently affirmed, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the Court. See United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020). After careful consideration, I find that release here is unjustified given the nature, circumstances and

seriousness of Defendant's offense, Defendant's history and characteristics, and the needs for protection of the public, just punishment, and deterrence.

As set forth previously, Defendant agreed to a term of 188 months' incarceration pursuant to the parties' Rule 11(c)(1)(C) plea agreement, which I accepted at the sentencing hearing. Defendant has over 7 years remaining on that sentence, with a projected release date in July 2028. Neither party appealed this agreed-upon sentence, which was at the lower end of the applicable guideline range, and I believe that such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case. See 18 U.S.C. § 3553(a)(1). Defendant's offenses in this case were serious, including both firearms violations and witness tampering.[3] Defendant additionally agreed to forfeit his interest in property that included a handgun and ammunition. I also have considered Defendant's criminal history and, significantly, the fact of Defendant's armed career criminal status which resulted from a string of past drug-trafficking offenses. I acknowledge Defendant's representations in his motion that he has strong family ties in his community and has not been cited for any misconduct while incarcerated. [Crim. No. 15-146, ECF No. 62, at 1-2; Crim. No. 15-263, ECF No. 30, at 1-2]. Given the nature of his offenses, however, the substantial sentence reduction Defendant requests would undermine the need for his sentence to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment, and to avoid unwarranted sentencing disparities. As one court has aptly explained, while "[a] just punishment should not include an unacceptable risk of exposure to Covid-19 or any potential lethal disease, . . . neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment." United States v. Montanez, Case # 15-CR-122-FPG, 2020 WL 4218007, at *5 (W.D.N.Y. July 23, 2020) (internal quotations and citation omitted).

---

[3] The nature of Defendant's crimes (firearms possession in his community and attempting to get an associate to lie about that possession) also raise the fear that Defendant would be a danger to the community if released early. See 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(2).

In light of the above, I cannot confidently conclude that additional incarceration is unnecessary to prevent Defendant from committing further offenses or to protect the public from such. Given the substantial time remaining on Defendant's sentence, his serious offenses, and his criminal history, I find that his sentence remains sufficient, but not greater than necessary, to meet all of the goals of sentencing. Accordingly, I find that, in addition to the lack of "extraordinary and compelling" reasons, the § 3553(a) factors weigh heavily against compassionate release.

THEREFORE, this 4th day of January, 2021, it is ordered that Defendant's Motions for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act of 2018, [Crim. No. 15-146, ECF No. 62; Crim. No. 15-263, ECF No. 30] are DENIED.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge